UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN BUSHANSKY,<br><br>Plaintiff,<br><br>v.<br><br>COWEN INC., JEFFREY M. SOLOMON, BRETT BARTH, KATHERINE E. DIETZE, GREGG A. GONSALVES, LORENCE H. KIM, STEVEN KOTLER, LAWRENCE E. LEIBOWITZ, MARGARET L. POSTER, and DOUGLAS A. REDIKER,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Cowen Inc. ("Cowen" or the "Company") and the members of Cowen's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Cowen will be acquired by The Toronto-Dominion Bank ("TD") through TD's subsidiary Crimson Holdings Acquisition Co. ("Merger Sub") (the "Proposed Transaction").

2. On August 2, 2022, Cowen and TD issued a joint press release announcing entry into an Agreement and Plan of Merger dated August 1, 2022 (the "Merger Agreement") to sell Cowen to TD. Under the terms of the Merger Agreement, each Cowen stockholder will receive $39.00 in cash for each share of Cowen common stock (the "Merger Consideration"). The Proposed Transaction is valued at approximately $1.3 billion.

3. On September 27, 2022, Cowen filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Cowen stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Cowen's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Ardea Partners LP ("Ardea"); and (iii) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Cowen's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. The Company maintains its principal executive offices located at 599 Lexington Avenue, New York, New York 10022. Moreover, Signify's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Cowen.

9. Defendant Cowen is a Delaware corporation, with its principal executive offices located at 599 Lexington Avenue, New York, New York 10022. The Company is a diversified financial services firm with offices worldwide. Cowen's common stock trades on the Nasdaq Global Select Market under the ticker symbol "COWN."

10. Defendant Jeffrey M. Solomon ("Solomon") has been Chair of the Board since 2019, Chief Executive Officer ("CEO") of the Company since 2017, and a director since 2011.

11. Defendant Brett Barth ("Barth") is Independent Lead Director and has been a director of the Company since 2018.

12. Defendant Katherine E. Dietze ("Dietze") has been a director of the Company since 2011.

13. Defendant Gregg A. Gonsalves ("Gonsalves") has been a director of the Company since 2020.

14. Defendant Lorence H. Kim ("Kim") has been a director of the Company since February 2022.

15. Defendant Steven Kotler ("Kotler") has been a director of the Company since 2010.

16. Defendant Lawrence E. Leibowitz ("Leibowitz") has been a director of the Company since 2018.

17. Defendant Margaret L. Poster ("Poster") has been a director of the Company since 2019.

18. Defendant Douglas A. Rediker ("Rediker") has been a director of the Company since 2015.

19. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

20. TD and its subsidiaries are collectively known as TD Bank Group ("TD Group"). TD is the fifth largest bank in North America by assets and serves more than 26 million customers in three key businesses operating in a number of locations in financial centers around the globe: Canadian Retail, including TD Canada Trust, TD Auto Finance Canada, TD Wealth (Canada), TD Direct Investing, and TD Insurance; U.S. Retail, including TD Bank, America's Most Convenient Bank®, TD Auto Finance U.S., TD Wealth (U.S.), and an investment in The Charles Schwab Corporation; and Wholesale Banking, including TD Securities. TD Group ranks among the world's leading online financial services firms, with more than 15 million active online and mobile customers. TD had CDN$1.8 trillion in assets on April 30, 2022.

21. Merger Sub is a Delaware corporation and an indirect wholly owned subsidiary of TD.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22. Founded in 1918, Cowen is headquartered in New York and has offices throughout the world. The Company is a diversified financial services firm that, together with its consolidated subsidiaries, provides investment banking, research, sales and trading, prime brokerage, global clearing, securities financing, commission management services and investment management through its two business segments: the Operating Company ("Op Co") and the Asset Company ("Asset Co").

23. The Op Co segment consists of four divisions: the Cowen Investment Management ("CIM") division, the Investment Banking division, the Markets division (which includes sales and trading, prime brokerage, global clearing, securities financing and commission management services) and the Research division. The Asset Co segment consists of the Company's private investments, private real estate investments and other legacy investment strategies. The focus of Asset Co is to drive future monetization of the invested capital of the segment. As of December 31, 2021, Cowen employed 1,534 employees out of its worldwide offices.

24. As of December 31, 2021, the Company had assets under management of $15.8 billion, an increase of $1.0 billion from September 30, 2021, and up $3.3 billion from December 31, 2020, respectively.

25. On July 20, 2022, the Company's Board of Directors declared a cash dividend of $0.12 per common share, payable on September 15, 2022, to stockholders of record on September 1, 2022.

26. On August 3, 2022, Cowen announced its second quarter 2022 financial results and business developments. As of June 30, 2022, the Company had AUM of $14.7 billion, up 2%, or $0.3 billion, from June 30, 2021. As of June 30, 2022, the Company had invested capital in Op Co totaling $745.7 million, up from $723.2 million as of March 31, 2022. Also, during the quarter, the Company repurchased $3.3 million of its common stock. Reflecting on Cowen's results, defendant Solomon stated:

> Cowen delivered profitability in the second quarter in the face of challenging market conditions, which is a testament to the broad, resilient business we have built over the last several years. We are focused on outperforming for our clients, providing strategic advice, innovative financing solutions, world-class investment research, advanced execution capabilities and differentiated investment products.

**<u>The Proposed Transaction</u>**

27. On August 2, 2022, Cowen and TD issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> TORONTO and NEW YORK, Aug. 2, 2022 /PRNewswire/ – TD Bank Group ("TD") (TSX: TD) and (NYSE: TD) and Cowen Inc. ("Cowen") (NASDAQ: COWN) today announced a definitive agreement for TD to acquire Cowen in an all-cash transaction valued at US$1.3 billion, or US$39 for each share of Cowen common stock. Through this transaction, TD Securities will accelerate its long-term growth strategy in the United States by acquiring a high-quality and rapidly growing investment bank with outstanding talent and highly complementary products and services.
>
> "Cowen is a leading independent dealer with a premier U.S. equities business and a strong, diversified investment bank that, when combined with TD Securities, will allow us to accelerate our strategic U.S. growth plans," said Bharat Masrani, Group President and CEO, TD Bank Group. "Most importantly, the acquisition will provide new capabilities and increased depth in key business lines to meet our clients' needs and will allow us to leverage our combined expertise, talent, and integrated offerings across a much larger client base."
>
> With this acquisition, TD Securities will benefit from the addition of Cowen's 1,700 talented colleagues and its exceptional leadership team. Once the transaction closes, Jeffrey Solomon, Chair & CEO of Cowen, will join the senior leadership of TD Securities, reporting to Riaz Ahmed, President and CEO, TD Securities and

Group Head, Wholesale Banking, TD Bank Group. To leverage the strength of Cowen's brand, post-closing, parts of the combined business will be known as TD Cowen, a division of TD Securities, and will be headed by Mr. Solomon.

"At Cowen our success comes from striving to outperform in all we do by exceeding expectations and providing innovative solutions to, and partnering with, our clients. Taking this step will make us even stronger and more effective in serving their growing needs," said Mr. Solomon. "The strategic decisions and focused investments that we have made over the last few years have positioned Cowen for this exciting next chapter of our growth. I look forward to having our exceptional talent and valued clients join the TD family. We plan to do great things together because we are aligned with our cultural values of vision, empathy, sustainability, and tenacious teamwork."

"Together, we will have more than 6,500 professionals in 40 cities across the globe, extending our reach into new industry coverage areas and building even deeper, long-term client relationships," added Mr. Ahmed. "I look forward to welcoming Jeff and his team to TD Securities and to the fantastic opportunities for growth we will create together."

**TD Securities and Cowen – A Leading Full-Service Investment Bank**

The combined firms' pro-forma global revenues will increase by more than a third to approximately C$6.8 billion with added advisory, capital markets, equity execution and industry-leading research capabilities and broadened expertise in key growth sectors. Following the closing of the transaction, TD Securities' existing depth and breadth in global market research capabilities will benefit from Cowen's complementary and highly diverse equity research franchise, which is positioned among the top 10 research platforms in the U.S. by both stocks under coverage and number of publishing analysts and includes considerable expertise in Environmental, Social and Governance research. Furthermore, TD Securities' balance sheet and capital markets expertise are expected to bring immediate benefits to Cowen's existing client base.

**Transaction Highlights**

The transaction is expected to be modestly accretive to TD's 2023E adjusted EPS on a fully-synergized basis and generate approximately 14% adjusted return on invested capital on a fully-synergized run rate basis. The purchase price represents a 1.7 times multiple of Cowen's tangible book value as of March 31, 2022 and a 8.1 times multiple of Cowen's 2023E earnings. TD expects to achieve US$300-350 million in revenue synergies by year three. TD expects to incur total pre-tax integration and retention costs of approximately US$450 million over three years.

The transaction, which has been approved by the boards of directors of TD and Cowen, is expected to close in the first calendar quarter of 2023, and is subject to

customary closing conditions, including approvals from Cowen's stockholders and certain U.S., Canadian, and foreign regulatory authorities, including the Office of the Superintendent of Financial Institutions (OSFI), the Financial Industry Regulatory Authority (FINRA), and under the Hart-Scott-Rodino (HSR) Act.

To provide the capital required for the transaction, TD has sold 28.4 million non-voting common shares of The Charles Schwab Corporation ("Schwab") for proceeds of approximately US$1.9 billion, reducing TD's ownership interest from approximately 13.4% to 12.0%. When combined with this share sale, the acquisition of Cowen is expected to be neutral to TD's Common Equity Tier 1 ratio which is expected to be comfortably above 11% at closing, pro forma for the closing of TD's acquisition of First Horizon Corporation.[7]

TD's strategy with respect to its investment in Schwab has not changed and it has no current intention to divest additional shares.

**Advisors**

Perella Weinberg Partners LP served as financial advisor, and Simpson Thacher & Bartlett LLP and Torys LLP served as legal advisors to TD. Ardea Partners and Perkins Advisors LLC served as financial advisors, and Cravath, Swaine & Moore LLP served as legal advisor to Cowen.

**Insiders' Interests in the Proposed Transaction**

28. Cowen insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Cowen.

29. Notably, certain Company insiders have secured positions for themselves with the combined company and will be eligible for annual variable compensation in the form of cash-based and equity-based awards. Defendant Solomon will be granted a base salary of $1,000,000 and join TD with the titles President, TD Cowen, Executive Vice President, TD Bank Group, and Vice Chair, TD Securities. Mr. Dan Charney will be granted a base salary of $750,000 and join TD as Co-Head, Global Markets, TD Securities and Vice Chair, TD Cowen. Mr. Larry Wieseneck will be granted a base salary of $750,000 and join TD as Co-Head, Global Investment Banking,

TD Securities and Vice Chair, TD Cowen. Mr. John Holmes will be granted a base salary of $725,000 and join TD as COO, TD Cowen and Vice President, TD Bank Group. Mr. Stephen Lasota will be granted a base salary of $725,000 and join TD as Chief Financial Officer ("CFO"), TD Cowen and Vice President, TD Bank Group. Mr. Owen Littman will be granted a base salary of $725,000 and join TD as General Counsel, TD Cowen and Vice President, TD Bank Group. For the 2023 fiscal year, the Executives are entitled upon completion of employment for such fiscal year to certain minimum amounts (pro-rated if applicable) as it relates to their annual variable compensation as follows: $9,000,000 for defendant Solomon, $7,750,000 for each of Messrs. Charney and Wieseneck, $2,275,000 for Mr. Holmes, and $1,775,000 for each of Messrs. Lasota and Littman. Such executives will be paid a one-time cash retention bonus on the closing of the merger (the "Closing Retention Bonus"). The amount of each Closing Retention Bonus is as follows: $12,667,000 for defendant Solomon, $10,500,000 for each of Messrs. Charney and Wieseneck, $3,333,000 for Mr. Holmes and $3,000,000 for each of Messrs. Lasota and Littma. Each executive will also be granted a one-time deferred cash retention award, in amounts as follows: $25,333,000 for defendant Solomon, $21,000,000 for each of Messrs. Charney and Wieseneck, $6,667,000 for Mr. Holmes, and $6,000,000 for each of Messrs. Lasota and Littman. Finally, each of defendant Solomon and Messrs. Charney and Wieseneck will be granted a one-time deferred cash integration award (the "Integration Bonus"), which will cliff vest on the third anniversary of the closing of the merger, subject to continued employment. Defendant Solomon will receive an Integration Bonus of $7,500,000 and each of Messrs. Charney and Wieseneck will receive an Integration Bonus of $5,000,000.

30. Additionally, pursuant to the Merger Agreement, all outstanding Company restricted stock units ("RSUs"), performance stock units ("PSUs"), and deferred cash awards

("DCA") held by Company insiders will be subject to accelerated vesting or will fully vest upon a qualifying termination. The following table summarizes the value, of Company equity awards that insiders stand to receive:

**Outstanding Compensation Awards ($)(In Thousands)**

| Name(1) | Company RSUs | Company PSUs | Company DCAs | Total |
|---|---|---|---|---|
| *Executive Officers* | | | | |
| Jeffrey Solomon | 11,363 | 6,493 | 8,302 | 26,158 |
| John Holmes | 993 | 1,498 | 731 | 3,222 |
| Stephen Lasota | 893 | 1,416 | 664 | 2,973 |
| Owen Littman | 914 | 1,416 | 676 | 3,006 |

31. Moreover, if they are terminated in connection with the Proposed Transaction, Cowen's named executive officers stand to receive substantial cash severance, as set forth in the following table:

**Potential Payments to Named Executive Officers ($)(In Thousands)**

| Name | Cash(1) | Equity(2) | Perquisites/ Benefits(3) | Total |
|---|---|---|---|---|
| Jeffrey Solomon | 58,719 | 17,856 | 99 | 76,674 |
| John Holmes | 13,671 | 2,491 | 44 | 16,206 |
| Stephen Lasota | 12,104 | 2,309 | 46 | 14,459 |
| Owen Littman | 12,116 | 2,330 | 67 | 14,513 |

**<u>The Proxy Statement Contains Material Misstatements and Omissions</u>**

32. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Cowen's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

33. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Cowen's financial projections; (ii) the data and inputs underlying the financial

valuation analyses that support the fairness opinion provided by Ardea; and (iii) the background of the Proposed Transaction.

***Material Omissions Concerning Cowen's Financial Projections***

34. The Proxy Statement omits material information regarding Cowen's financial projections.

35. Specifically, with respect to each of the Company's forecast scenarios the Proxy Statement fails to disclose the line items underlying (i) Unlevered Free Cash Flow and (ii) Economic Operating Income.

36. The omission of this material information renders the statements in the "Financial Forecasts" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Ardea's Financial Analyses***

37. The Proxy Statement omits material information regarding Ardea's financial analyses.

38. The Proxy Statement describes Ardea's fairness opinion, and the various valuation analyses they performed in support of its opinion. However, the descriptions of Ardea's fairness opinion and analyses fail to include key inputs and assumptions underlying these analyses. Without this information, as described below, Cowen's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Ardea's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

39. With respect to Ardea's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount

rates of 10.5% to 11.5% used in the analysis; (ii) Cowen's net debt as of March 31, 2022; and (iii) Cowen's class A common stock outstanding on a fully diluted basis as of March 31, 2022.

40. With respect to Ardea's *Illustrative Present Value of Future Stock Price and Dividends Analysis*, the Proxy Statement fails to disclose quantification of the inputs and assumptions underlying the discount rate of 12.1% used in the analysis.

41. With respect to Ardea's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose Cowen's book value per share as of March 31, 2022.

42. Without such undisclosed information, Cowen stockholders cannot evaluate for themselves whether the financial analyses performed by Ardea were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required to ensure that stockholders can fully evaluate the extent to which Ardea's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

43. The omission of this material information renders the statements in the "Opinion of Ardea Partners LP" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

44. The Proxy Statement omits material information regarding the sale process leading to the Proposed Transaction.

45. For example, in connection with the transaction, Perkins Advisors, LLC ("Perkins Advisors") was formally engaged to act as the Company's financial advisor. The Proxy Statement fails, however, to disclose the compensation to be received by Perkins Advisors for acting as the

Company's financial advisor in connection with the Proposed Transaction, whether Perkins Advisors' compensation is contingent on consummation of the Proposed Transaction and whether Perkins Advisors had performed any prior work for TD and its affiliates and, if so, the compensation received by Perkins Advisors for those services.

46. The omission of this material information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

47. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Cowen will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

48. Plaintiff repeats all previous allegations as if set forth in full.

49. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresents and/or omits material facts, including material information about the Company's financial projections, Ardea's financial valuation analyses, and the background of the Proposed Transaction.

51. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

52. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

53. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

54. Plaintiff repeats all previous allegations as if set forth in full.

55. The Individual Defendants acted as controlling persons of Signify within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Signify, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

58. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Cowen's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Cowen, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Cowen stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 7, 2022

**WEISS LAW**

By *s/ Michael A. Rogovin*

Michael A. Rogovin
476 Hardendorf Ave. NE
Atlanta, GA 30307
Tel: (404) 692-7910
Fax: (212) 682-3010
Email: mrogovin@weisslawllp.com

*Attorneys for Plaintiff*